# IN THE COURT OF APPEALS OF IOWA

No. 20-1684
Filed July 21, 2021

IN THE INTEREST OF A.M. and C.M.,
Minor Children,

B.T., Father,
    Appellant.

_____

Appeal from the Iowa District Court for Polk County, Kimberly Ayotte, District Associate Judge.

The father appeals the termination of his parental rights. **AFFIRMED**.

Kaitlyn C. DiMaria, Des Moines, for appellant father.

Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant Attorney General, for appellee State.

Paul White, Des Moines, attorney and guardian ad litem for minor children.

Considered by Bower, C.J., and Tabor and Ahlers, JJ.

**AHLERS, Judge.**

The father appeals from the termination of his parental rights to both his biological son, A.M, born in 2011, and his legally established son, C.M., born in 2018.[1]  On appeal, the father contends the State failed to present sufficient evidence to establish statutory grounds for termination.  He also contends it was not in the children's best interests for his rights to be terminated.  Finally, he contends the exception in Iowa Code section 232.116(3)(a) (2020) should preclude termination of his rights.  After our de novo review of the record,[2]  we find clear and convincing evidence establishing grounds for termination and that termination is in the children's best interests.  We also find it inappropriate to apply a permissive exception to avoid termination of the father's parental rights.  As a result, we affirm.

**I.      Factual and Procedural Background.**

The children were removed from the mother's and father's care in July 2019.  Removal occurred due to the mother using illegal drugs, the mother leaving the children home alone while she left to use drugs, domestic violence between the mother and father, and the father's assault of the children's maternal grandmother in the presence of the children.

Child-in-need-of-assistance proceedings were started, and services were offered to the family.  The father failed to fully engage in required services.  Based

---

[1] The mother of both children consented to termination of her rights to the children. C.M.'s biological father consented to the termination of his rights to C.M.  Neither the mother nor the biological father of C.M. appealed.  Further uses of "the father" in this opinion refer to the biological father of A.M. and the legally established father of C.M. rather than C.M.'s biological father.

[2] Termination-of-parental-rights proceedings are reviewed de novo.  *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018).   While we are not bound by the juvenile court's findings, we give them weight, especially as to witness credibility assessments.  *Id.*

in part on the mother's reports of using drugs with the father, the father was directed to participate in drug testing and treatment. While he obtained the requested substance-abuse evaluation, which did not recommend treatment, he failed to submit to required drug testing to confirm his sobriety. Further, the father was directed to participate in therapy to address his history of domestic violence. Rather than engage in therapy, however, he denied the allegations of assaultive behavior, despite several family members' accounts of the violence.

The father also failed to maintain consistent and meaningful contact with the children after removal. He declined opportunities to communicate with the children's foster family about the children. He was sporadic in attending visits with the children. When he did attend, he did not bring necessary items to care for the children, would often not interact with A.M., and would engage in behavior not appropriate for the children. The inappropriate behavior included asking A.M. adult questions to get information from the child. He also failed to support A.M.'s mental-health diagnoses, belittled recommended treatment in front of A.M., and tried to cancel services for the child.

Besides sporadic involvement in visits, the father also failed to attend several court proceedings, including the second day of the two-day termination hearing.[3] Although he testified at the first day of the hearing, his testimony raised

---

[3] Although not listed as a separate issue in his petition on appeal, the father mentions in passing a claim that the juvenile court erred in denying his motion to continue the second day of the hearing due to his absence. However, we find no evidence the father requested a continuance, either in a court filing or by his attorney's verbal motion. Issues must be raised and decided in the district court before we will hear an issue on appeal. *Meier v. Senecaut*, 641 N.W.2d 532 (Iowa 2002). As the father did not request a continuance, the issue was not preserved and we will not consider it.

concerns. The father testified to several grandiose ideas about his own life and abilities, insisting he has been offered a job at NASA and has plans to move to Florida. The father alleged he is involved with an FBI investigation of his phone and accounts being "hacked," but he failed to give understandable details. He also asserted he has a photographic memory, but he could not recall even the simplest of things, especially as it related to his claims of an unsubstantiated cancer diagnosis and subsequent treatment. This irregular and seemingly delusional behavior aligns with his demeanor during interactions with service providers and raised concerns regarding his ability to provide a stable environment for the children.

Based on facts recited, the juvenile court terminated the father's parental rights under Iowa Code section 232.116(1)(d), (e), (f), and (h). The father appeals.

## II. Analysis.

Termination-of-parental-rights proceedings follow a three-step process. *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). A ground for termination under Iowa Code section 232.116(1) must be established. *Id.* If a ground has been established, the court then considers whether termination is in the best interests of the children, as examined under the framework in section 232.116(2). *Id.* If the best-interests framework supports termination, the court must then consider whether there are any applicable exceptions that may preclude termination under section 232.116(3). *Id.*

### A. Statutory Grounds.

The father contends the State failed to present clear and convincing evidence to establish the statutory grounds for termination under Iowa Code

section 232.116(1)(d), (e), (f), and (h). On appeal, we can affirm the juvenile court's decision based on sufficient evidence for any ground. *In re M.W.*, 876 N.W.2d 212, 221 (Iowa 2016). We choose to focus on the grounds in section 232.116(1)(f) for A.M. and section 232.116(1)(h) for C.M.

Termination of parental rights is permitted under section 232.116(1)(f) if all of the following are established:

> (1) The child is four years of age or older.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

The statutory requirements for termination under section 232.116(1)(h) are the same, except the age of the child and the duration of removal. *See* Iowa Code § 232.116(1)(h)(1) (three years or younger), (h)(3) (removed for at least six of the last twelve months, or for the last six consecutive months).

The father contests only the satisfaction of element (4) under each section—that there is clear and convincing evidence the children could not be returned to his custody. Clear and convincing evidence means "there are no 'serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence.'" *D.W.*, 791 N.W.2d at 706 (quoting *In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000)).

The father contends the children could have been returned to his custody at the time of the termination hearing. We disagree. The father never progressed

past supervised visits with the children. Beyond that, as previously noted, he was sporadic in exercising visitation, and, when he did, he did not act appropriately. Skipping hearings, including the second day of the termination hearing, demonstrated lack of commitment to the children.

Further, service providers expressed concerns about the father's substance use and mental health. The father's conversations with service providers were often bizarre and showed signs of paranoia by the father. The father failed to address both the substance-abuse and mental-health concerns and his tendency toward domestic violence.

The father's biological child suffers from developmental delays due to complications at birth and post-traumatic-stress disorder from witnessing the father's abuse of the mother and maternal grandmother. As a result, the child exhibits some difficult behaviors and requires academic assistance, occupational and speech therapies, and medication management. More than once, service providers heard the father tell the child the services are unnecessary. The father also tried to cancel all the child's services. The child's special needs coupled with the father's unwillingness to assist in addressing them contributes to our conclusion the children could not be placed in the father's care.

Based on our de novo review, we agree with the juvenile court that the children cannot be placed in the father's care. As this is the only challenge to the statutory grounds for termination, we conclude the State met its burden of establishing grounds for termination.

**B.	Best Interests of the Children.**

The second step requires analysis of whether termination of the parent's rights is in the children's best interests.  *A.S.*, 906 N.W.2d at 474 (citing Iowa Code § 232.116(2)).  The court's primary concerns are the children's safety; the best placement for long-term nurturing and growth; and the physical, mental, and emotional needs of the children.  *Id.*  In determining what is best, the court can consider the parents' mental capacity or condition, the parents' imprisonment, the child's integration into any foster placement, and testimony from a foster parent or relative.  *Id.*  Within this framework is the understanding that children should not be deprived permanency in hope of future responsible parenting.  *Id.* at 474–75.

We find termination of the father's rights is in the children's best interests. The facts supporting that determination are largely the same as the facts supporting the finding the children cannot be returned to the father.  We will not repeat them, but we will highlight some of those facts along with additional ones.

The father has been notably inconsistent in his participation in visitation and services.  The father's testimony made clear he is not supportive of the older child's services.  That testimony also revealed concerns about the father's mental state. For these children, who deserve and require stability, it would be in their best interests to terminate the father's rights and free them for adoption.  The children have primarily resided with their maternal grandmother since removal.  The grandmother has ensured the children attend doctor's appointments, receive the services necessary, and have a stable home environment.  The children lived with their grandmother even before removal and have integrated well into her home since.  She is also willing to adopt both children, providing hope for future long-

term stability for the children. After our de novo review, we conclude termination of the father's rights is in the children's best interests.

### C. Permissive Exceptions.

The parent contesting termination bears the burden to establish an exception precludes termination. *Id.* at 476. Use of an exception to avoid termination, however, is permissive and not mandatory. *Id.* at 475. It is in the court's discretion whether to save the parent-child relationship. *Id.* Here, the father contends the permissive exception in Iowa Code section 232.116(3)(a) precludes termination.[4] Although legal custody was with the children's maternal grandmother, we decline to apply this exception to avoid termination. The father failed to consistently and meaningfully maintain contact with the children despite opportunities to do so, and he has failed to adequately address his mental-health, substance-abuse, and domestic-violence issues. The benefits of terminating rights and freeing the children for the long-term stability of adoption outweighs any consideration of the fact a relative has custody. *See In re C.K.*, 558 N.W.2d 170, 174 (Iowa 1997) ("An appropriate determination to terminate a parent-child relationship is not to be countermanded by the ability and willingness of a family relative to take the child.").

### III. Conclusion.

We affirm the juvenile court's termination of the father's parental rights. The statutory grounds for termination have been established, termination is in the

---

[4] Iowa Code section 232.116(3)(a) permits the court to decline to terminate parental rights if "[a] relative has legal custody of the child."

children's best interests, and the fact the children are in the custody of their grandmother does not warrant a refusal to terminate rights.

**AFFIRMED**.